IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| GEMINI INSURANCE COMPANY, | * | |
| | * | |
| Plaintiff/Counter-Defendant | * | |
| | * | |
| v. | | Civil Action No. RDB-16-2520 |
| | * | |
| EARTH TREKS, INC., | * | |
| | * | |
| Defendant/Counter-Plaintiff. | * | |

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

## MEMORANDUM OPINION

Gemini Insurance Company ("Gemini") has brought this action against Earth Treks, Inc. ("Earth Treks"), a Maryland corporation operating a series of rock climbing gyms, which purchased a commercial general liability insurance policy issued by Gemini (the "Policy"). Gemini seeks a declaration that it did not owe Earth Treks a defense[1] under the Policy or, alternatively, owed Earth Treks a defense limited to $100,000, in the now-settled underlying action of *Kelsey Fabian v. Earth Treks, Inc.*, Case Number 13-C-14-100242 (the "*Fabian* Suit") in the Circuit Court for Howard County, Maryland. *See* Compl., p. 1, ECF No. 1. Earth Treks expended approximately $1,200,000 in defending against the *Fabian* Suit, but Gemini has declined to reimburse Earth Treks for any portion of that amount. Earth Treks has now filed a Counterclaim against Gemini, alleging breach of the Policy's defense provisions and requesting a monetary judgment in the full amount of its costs and expenses incurred in defending against the *Fabian* Suit. *See* Counterclaim, ¶¶ 85-89, ECF No. 7.

---

[1] Gemini has additionally sought a declaration that Gemini did not owe Earth Treks indemnification, but the parties have subsequently resolved that issue. *See* January 25, 2017 Status Report, ¶ 5, ECF No. 26.

Currently pending before this Court are Earth Treks' Motion for Partial Summary Judgment (ECF No. 19) and Gemini's Cross-Motion for Summary Judgment (ECF No. 27) on the issue of liability. Specifically, the issues before this Court are whether or not Gemini owed Earth Treks a defense in the underlying *Fabian* Suit and if so, whether Gemini's defense obligation is limited by one or more of the Policy's coverage limitation endorsements. Also pending is Earth Treks' Motion to Strike Gemini's Extrinsic Evidence (ECF No. 28).

The parties' submissions have been reviewed, and no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2016). For the reasons stated herein, Earth Treks' Motion for Partial Summary Judgment (ECF No. 19) is GRANTED IN PART and DENIED IN PART, and Gemini's Cross-Motion for Summary Judgment (ECF No. 27) is also GRANTED IN PART and DENIED IN PART. Specifically, Gemini did owe Earth Treks a defense in the *Fabian* Suit as a matter of law, but its defense obligation is limited to $100,000 pursuant to the "Sexual Abuse or Molestation" ("SAM") coverage limitation endorsement or, alternatively, the "Assault, Battery, or Assault and Battery" ("A&B") endorsement. Accordingly, Judgment is entered for Earth Treks on Gemini's initial claim for declaratory judgment and Earth Treks' Counterclaim for breach of contract, subject to a $100,000 limit on Gemini's defense liability. This case shall proceed to a separate determination of the specific damages to be awarded, pursuant to this Court's Bifurcation Order of December 22, 2016 (ECF No. 25). Additionally, Earth Treks' Motion to Strike Gemini's Extrinsic Evidence (ECF No. 28) is GRANTED. All extrinsic evidence submitted by Gemini is stricken and has not been considered by this Court in determining whether Gemini owed Earth Treks a defense or in determining the scope of that defense under the coverage limitation endorsements.

# BACKGROUND

## I. Earth Treks Rock Climbing Gyms

Defendant/Counterclaim-Plaintiff Earth Treks, Inc. ("Earth Treks") is a Maryland corporation operating three rock climbing gyms in Rockville, Timonium, and Columbia, Maryland, and a fourth gym in Golden, Colorado. *Fabian* Second Am. Compl., ¶¶ 2, 9, ECF No. 7-7. "Each of these locations offers climbing lessons and instructions." *Id.*, ¶ 9. Additionally, Earth Treks leads climbing teams for children between the ages of six (6) and eighteen (18), including "Team Earth Treks," a nationally ranked competition team. *Id.* ¶ 10. In 2008, Earth Treks hired Michael Lyons ("Lyons") to be the head coach of Team Earth Treks. *Id.*, ¶ 17. Daniel Montague ("Montague") was the assistant coach. *Id.*, ¶ 29.

## II. Gemini's Commercial General Liability Insurance Policy

Earth Treks is a participating member of the "Climbing Wall Association." Counterclaim, ¶ 2, ECF No. 7. Plaintiff/Counterclaim-Defendant Gemini Insurance Company ("Gemini") has issued a commercial general liability insurance policy (Policy Number VUMC 10000010) (the "Policy") to the participating members of the Climbing Wall Association, including Earth Treks. *See* Policy, ECF No. 1-1; Certificate, ECF No. 7-1. At all relevant times, the Policy has provided Earth Treks general liability coverage subject to a per occurrence limit of $1,000,000 and an aggregate limit of $2,000,000. *Id.* at 1.

The Policy provides insurance against "bodily injury" or "property damage" caused by an "occurrence" that takes place in the "coverage territory." *Id.* at 6. The Policy defines "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." *Id.* at 19. The Policy further provides that "[Gemini] will

have the right and duty to defend any 'insured' against any 'suit' seeking those damages . . . . [h]owever, [Gemini has] no duty to defend the insured against any 'suit' seeking damages for 'bodily injury' or 'property damage' to which [the] insurance does not apply." *Id.* at 6. Additionally, the Policy excludes coverage for " 'bodily injury' . . . expected or intended from the standpoint of the insured.' " *Id.* at 7. The Policy further includes two separate coverage limitation endorsements for damages resulting from "Sexual Abuse or Molestation" (the "SAM" endorsement) and "Assault, Battery, or Assault and Battery" (the "A&B" endorsement"). *Id.* at 59-60. Coverage for claims that fall within the scope of those endorsements is limited to $100,000 for "Each Claim" and $300,000 in the "Aggregate." *Id.* Under both endorsements, "[a]ll claims for damages made by one or more persons because of *any one act or series of acts* . . . shall be deemed to be *one claim*." *Id.* (emphasis added).

III.    The Underlying "*Fabian* Suit" – *Fabian v. Earth Treks, Inc.*, No. 13-C-14-100242

On April 16, 2014, Kelsey Fabian ("Fabian"), a former member of Team Earth Treks, filed suit against Earth Treks in the Circuit Court for Baltimore County, Maryland. *See Fabian v. Earth Treks, Inc.*, Case No. 13-C-14-100242 (the "*Fabian* Suit"). The case was subsequently transferred to the Circuit Court for Howard County, Maryland on Earth Treks' motion. Fabian, then a minor acting under the direction of her parents, initially brought suit under the pseudonym "Jane Doe," but was required to proceed under her real name after the case was transferred. The Second Amended Complaint was the operative Complaint in that now-settled action. Kelsey Fabian's allegations were as follows:

In September of 2010, Fabian joined Team Earth Treks at the Earth Treks gym in Columbia, Maryland. *Fabian* Second Am. Compl., ¶ 29, ECF No. 7-7. At that time, Fabian

4

was thirteen years old. *Id.* Head Coach Lyons was thirty years old, and Assistant Coach Montague was nineteen years old. *Id.* Fabian has claimed that Lyons had a history of inappropriate relationships with Earth Treks students and team members, of which Earth Treks personnel were aware. *Id.*, ¶¶ 21-22. She has alleged that Lyons and Montague "engaged in a course of increasingly aggressive sexual behavior" targeted at her and at least one other climber. *Id.*, ¶¶ 30-31. It is specifically alleged that "Montague . . . engaged in sexual activity with [her] on multiple occasions between March and May of 2011." *Id.*, ¶ 34.

"Despite the increasingly apparent nature of Michael Lyons' inappropriate, sexual behavior," Earth Treks permitted him to lead a team trip to Massachusetts in the "late Spring/early Summer of 2011." *Id.*, ¶ 43. Lyons and members of Team Earth Treks stayed in the same hotel room, "an arrangement that was known to Earth Treks beforehand." *Id.*, ¶ 44. During this trip, Lyons "engaged in sexual intercourse with [Fabian] twice in his hotel room." *Id.* The following weekend, "Earth Treks again permitted Mr. Lyons to organize and conduct a sleepover event with Earth Treks' youth climbers" at the Earth Treks gym in Columbia, Maryland. *Id.*, ¶ 45. That night, Lyons again sexually assaulted then-fourteen-year-old Fabian in a storage closet. *Id.*

In connection with these allegations, Fabian brought a three-count Second Amended Complaint against Earth Treks for Negligence (Count I), Negligent Hiring, Retention, and Supervision (Count II), and Respondeat Superior Liability (Count III). *Id.*, ¶¶ 54-98. Earth Treks coaches Lyons and Montague each subsequently pled guilty to various sex offenses in the Circuit Court for Howard County, Maryland. *Id.*, ¶ 11 (citing *State v. Lyons*, Case No. 13-K-11-051485; *State v. Montague*, Case No. 13-K-11-51536). As a result of repeated sexual

assaults by both Lyons and Montague, Fabian has claimed injuries "in the form of significant, negative effects on [her] health." *Id.*, ¶ 50. In August of 2016, Earth Treks and Fabian reached a settlement in the *Fabian* Suit that was reflected in a confidential Settlement Agreement and Release. *See Gemini* Counterclaim, ¶ 50, ECF No. 7.

IV.     Earth Treks' Extrinsic Evidence as to the Fabian Allegations

Earth Treks Chief Executive Officer Christopher Warner ("Warner"), Chief Operating Office Christopher Jenkins ("Jenkins"), and Vice President of Operations Scott Heidtman ("Heidtman") have stated that "[n]o one in Earth Treks' senior management knew or suspected that Michael Lyons or Daniel Montague would engage in inappropriate sexual activity or conduct with Kelsey Fabian or with any other Earth Treks team member." *See, e.g.*, Warner Aff., ¶ 4, ECF No. 19-1. Prior to joining Earth Treks, Lyons was a USA Climbing certified coach and coached a competitive climbing team in Ohio. *See* Lyons Dep., pp. 18:14-19:3; 15:7-16:10, ECF No. 19-16. Additionally, Lyons was referred to Earth Treks by the parent of a Team Earth Treks climber. Jenkins Dep., p. 46:4-9, ECF No. 19-14. Before offering Lyons the coaching position, Earth Treks contacted Lyons' references, and members of Earth Treks management interviewed him. *Id.* at 51:10-17; 53:8-20; 58:4-9.

Detective Aaron Miller of the Howard County Police Department was an investigator in the criminal cases against Lyons and Montague. When asked by Earth Treks parents if they could have detected Lyons' and Montague's actions sooner, Detective Miller responded that "with no prior allegations, no criminal investigation, no criminal conviction, there would be no record of it." Miller Dep., p. 159:1-8, ECF No. 19-17. Detective Miller has explained that perpetrators of child sex abuse "groom" both their "victim[s]" and "social fabric" "to

see the [perpetrator] as being . . . above reproach." *Id.* at 154:11-155:5. Detective Miller has concluded that Lyons groomed both the Earth Treks parents and "Earth Treks as a corporate employer" because "no one seemed to have anything bad to say about him or would say anything bad about him . . . [t]hey all had praise about him." *Id.* at 157:1-15.

While Fabian was a minor incapable of legal consent, she has acknowledged her own wrongdoing. In a police interview on June 24, 2011, Fabian stated that the sexual abuse was "a little bit" her fault, that she "could have said no," that Montague did not threaten her, and that engaging in sexual intercourse with Lyons was a "mutual decision." Kelsey Fabian Interview, pp. 41-47, ECF No. 19-24. Additionally, Kelsey Fabian has indicated that she and her friend Clarissa Sheltraw composed a "bucket list" of sexual acts that they sought to complete. *Id.* at 20-29. Fabian completed several of those acts with Montague and Lyons, and initialed various items on the list with a "K" to indicate that she had completed them. *Id.* Fabian has further stated that she had a "little girl crush" on Montague shortly after joining Team Earth Treks. Kelsey Fabian Dep., p. 91, ECF No. 19-11. Fabian kissed Montague at Earth Treks and subsequently engaged in sexual acts with him about "four or five times" at her mother's home. Kelsey Fabian Interview, pp. 33-36, ECF No. 19-24. Sometime later, Fabian learned that Montague was also "doing stuff" with another sixteen-year-old climber named "Steph." *Id.* at 34-38. She has stated that she "was kind of upset with Dan." *Id.* at 43. Accordingly, when Lyons "started coming on to [her]" around that time, "[she] really didn't say no." *Id.* Fabian has stated that Lyons began "touching" her "[a]t Earth Treks in Columbia," "and [she] didn't say no." *Id.* at 44:1-6.

Earth Treks Executives Warner, Jenkins, and Heidtman have stated that "Daniel Montague was not working for Earth Treks when he and Kelsey Fabian engaged in their consensual sexual activity in Linda Fabian's home" and, accordingly, that "Kelsey Fabian at this time was not in the care, custody, or control of Earth Treks." *See, e.g.*, Warner Aff., ¶ 15, ECF No. 19-1. Additionally, Warner, Jenkins, and Heidtman have stated that "Earth Treks did not accept responsibility for the care, custody, control of Kelsey Fabian during the competitive-climbing trip to Massachusetts on June 11-12, 2011." *Id.*, ¶ 17. Kelsey travelled to the climbing competition in June of 2011 "in the care of" Georgann Sheltraw, her friend Clarissa's mother. *See, e.g.*, Georgann Sheltraw Dep., p. 19, ECF No. 19-21.

V.     The Instant Action – *Gemini Insurance Co. v. Earth Treks, Inc.* – No. RDB-16-2520

On January 2, 2014, counsel for Kelsey Fabian, then-proceeding under the pseudonym "Jane Doe," issued a demand letter upon Earth Treks, informing Earth Treks of Fabian's intent to file the *Fabian* Suit, discussed *supra*. *See* Demand Letter, ECF No. 7-9. After receiving that demand letter, Earth Treks notified Verus Underwriting Managers, LLC ("Verus"), claims services representative for Gemini, that Earth Treks may have a claim under the Policy in connection with the impending *Fabian* Suit and, via letter dated February 21, 2014 (ECF No. 7-10), Verus acknowledged receipt of Earth Treks' notice. Subsequently, Verus forwarded to Earth Treks a letter from Verus' outside coverage counsel, DeCaro, Doran, Siciliano, Gallagher, & DeBlasis, LLP (ECF No. 7-11), providing counsel's opinions as to, *inter alia*, Gemini's duty to defend Earth Treks in the *Fabian* Suit. The opinion letter stated that "if suit were filed [Gemini] would have a duty to defend under the [P]olicy," but

that "coverage for this claim would be limited to $100,000 each claim and $300,000 aggregate," pursuant to the Policy's "Sexual Abuse or Molestation" ("SAM") endorsement.

After Kelsey Fabian filed the *Fabian* Suit on April 16, 2014, Verus confirmed via letter dated May 8, 2014 (ECF No. 7-13) that the *Fabian* Suit did constitute a "claim" under the Policy, but that the SAM endorsement limited coverage for the lawsuit to "$100,000." In a response dated May 9, 2014 (ECF No. 7-14), counsel for Earth Treks agreed to this limitation, but "reserve[d] the right to renew its demand for indemnity and a defense based on the changed situation or circumstances." Additionally, Earth Treks declined to draw on the $100,000 coverage amount as defense costs were incurred, but rather requested that it be held in reserve to cover potential costs. Over a year later, on October 30, 2015, Verus inquired as to whether Earth Treks was ready to receive the $100,000 payment. *See* Verus October 30, 2015 Email, ECF No. 7-15. Earth Treks declined Verus' offer and instead sent Verus a letter (ECF No. 7-16), in which it reasserted its demand for indemnification and defense and argued that the SAM endorsement did not apply. Following several weeks of correspondence, Verus rejected Earth Treks' demand via letter dated July 5, 2016 (ECF No. 7-20) and further retained the right to "withdraw funding for the defense of Earth Treks if and when it is determined that there is *no coverage under* the Gemini policy." (emphasis added).

On July 8, 2016, Gemini filed the instant declaratory action in this Court, seeking a declaratory judgment that it owed Earth Treks no duty to defend or indemnify under the Policy or, alternatively, that its liability was limited to $100,000 under both the "SAM" and "Assault & Battery" ("A&B") endorsements. *See Gemini* Compl., ¶¶ 62-77. Subsequently, in August of 2016, Earth Treks and Fabian reached a settlement in the *Fabian* Suit that was

reflected in a confidential Settlement Agreement and Release. *See Gemini* Counterclaim, ¶ 50, ECF No. 7. Earth Treks has now filed a Counterclaim against Gemini for breach of contract for its failure to provide a full defense, without regard to the SAM and A&B endorsement limitations. *Id.*, ¶ 85. Earth Treks has indicated that it has "incurred costs and expenses, including attorneys' fees, expert witness fees, deposition costs, process server fees and the like, of approximate[ly] $1.2 million." *Id.*, ¶ 87. This action has been bifurcated into separate liability and damages phases, pursuant to this Court's Order of December 22, 2016 (ECF No. 25). Additionally, the parties have resolved the issue of indemnification, so the only remaining issues as to liability are whether or not Gemini owed Earth Treks a defense in the *Fabian* Suit and, if so, whether Gemini's liability was limited by either the SAM or A&B endorsements. *See* January 25, 2017 Status Report, ¶ 5, ECF No. 26. The parties have filed cross-motions for summary judgment (ECF Nos. 19 & 27) as to those questions.

## STANDARD OF REVIEW

Rule 56 of the Federal Rules of Civil Procedure provides that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "A dispute is genuine if 'a reasonable jury could return a verdict for the nonmoving party.' " *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (quoting *Dulaney v. Packaging Corp. of Am.*, 673 F.3d 323, 330 (4th Cir. 2012)). A material fact is one that "might affect the outcome of the suit under the governing law." *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A genuine issue over a material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

Where, as here, the parties have filed cross-motions for summary judgment, this Court "must consider each motion separately on its own merits to determine whether either of the parties deserves judgment as a matter of law." *Bacon v. City of Richmond*, 475 F.3d 633, 637-38 (4th Cir. 2007) (internal quotation marks omitted). " 'Both motions must be denied if the court finds that there is a genuine dispute of material fact.[] But if there is no genuine dispute and one or the other party is entitled to prevail as a matter of law, the court will render judgment.[]' " *Hicks v. Stanford*, No. ELH-14-928, 2016 WL 7426139, at *5 (D. Md. Dec. 23, 2016) (quoting 10A C. WRIGHT & A. MILLER, FED. PRACTICE & PROCEDURE, § 2720 (4th ed.)).

## ANALYSIS

### I. Gemini Did Owe Earth Treks a Defense in the Underlying *Fabian* Suit

The first question before this Court on the parties' cross-motions for summary judgment as to liability (ECF Nos. 19 & 27) is whether or not Gemini owed Earth Treks a defense in the now-settled Maryland state court negligence action *Kelsey Fabian v. Earth Treks, Inc.*, Case Number 13-C-14-100242 (the "Fabian Suit"). As discussed *supra*, Gemini's coverage counsel initially acknowledged that it did owe Earth Treks a defense in the *Fabian* Suit, limited to $100,000, but Gemini has subsequently taken the position that it owed Earth Treks *no defense*. Gemini contends that it "did not owe Earth Treks a defense in the [*Fabian* Suit] because the bodily injury alleged by [ ] Fabian was not accidental or unexpected from the standpoint of Earth Treks." Mem. Supp. Gemini Mot. Summ. J., p. 8, ECF No. 27-1. Accordingly, Gemini argues that Fabian's alleged injury does not constitute an "occurrence," or "accident" as that term is defined in the Policy and, additionally, that the Policy's coverage

exclusion for "expected or intended" injuries bars coverage. *Id.* at 9-10. However, although the *Fabian* Suit alleges negligence by Earth Treks with respect to the actions of Lyons and Montague, Earth Treks has presented extrinsic evidence demonstrating that it had no "actual, subjective knowledge of Lyons and Montague's proclivities" and did not "expect[ ] or fores[ee] that they would engage in the sexual misconduct that purportedly injured Kelsey Fabian." Mem. Supp. Earth Treks Mot. Summ. J., p. 28, ECF No. 19-27.

The parties agree that Maryland law governs this dispute. As this Court has recently explained in *Unwired Sols., Inc. v. Ohio Sec. Ins. Co.*, No. CCB-16-0405, 2017 WL 1165953, at *3 (D. Md. Mar. 29, 2017), "[i]n Maryland, an insurance company has a duty to defend its insured 'for all claims that are potentially covered under the policy' " (quoting *Walk v. Hartford Cas. Ins. Co.*, 852 A.2d 98, 106 (Md. 2004)). "That is, '[e]ven if a tort plaintiff does not allege facts which clearly bring the claim within or without the policy coverage, the insurer still must defend if there is a *potentiality* that the claim could be covered by the policy.' " *Id.* (quoting *Brohawn v. Transamerica Ins. Co.*, 347 A.2d 842, 850 (Md. 1975) (emphasis added)). In determining whether a duty to defend exists under Maryland law, this Court follows a two-part inquiry. "First, it examines the coverage and defenses under the terms and requirements of the insurance policy." *Id.* "Second, it asks whether the allegations in the underlying suit 'potentially bring the . . . claim within the policy's coverage.' " *Id.* (quoting *St. Paul Fire & Marine Ins. Co. v. Pryseski*, 438 A.2d 282, 285 (Md. 1981)). "The first question focuses upon the language and requirements of the policy, and the second question focuses upon the allegations of the tort suit." *Maryland Cas. Co. v. Blackstone Int'l Ltd.*, 114 A.3d 676, 682 (Md. 2015), *reconsideration denied* (June 17, 2015) (quoting *Pryseski*, 438 A.2d at

285.  "[W]here a potentiality of coverage is uncertain from the allegations of a complaint, any doubt must be resolved in favor of the insured."  *Id.* (quoting *Aetna Cas. & Sur. Co. v. Cochran*, 651 A.2d 859, 863-64 (Md. 1995)).

"Maryland does not follow the rule that insurance policies should, as a matter of course, be construed against the insurer."  *Megonnell v. United States Automobile Assn.*, 796 A.2d 758, 771-72 (Md. 2002).  "Instead, ordinary principles of contract interpretation apply."  *Id.* "Nevertheless, under the general principles of contract construction, if an insurance policy is ambiguous, it will be construed liberally in favor of the insured and against the insurer as drafter of the instrument."  *Empire Fire & Marine Ins. Co. v. Liberty Mut. Ins. Co.*, 699 A.2d 482, 494 (Md. Ct. Spec. App. 1997).  Additionally, where a duty to defend is contested, an insurer may not look outside the underlying pleadings to deny its obligations.  *Cochran*, 651 A.2d at 863.  An insured, however, may rely on extrinsic evidence.  *Id.* at 866.[2]

The Policy in this case provides coverage for "occurrence[s]," which it defines as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."  This Court has observed that an "accident" occurs under Maryland law " 'if in that act, something unforeseen, unusual and unexpected occurs which produces the event.' "  *Nautilus Ins. Co. v. BSA Ltd. P'ship*, 602 F. Supp. 2d 641, 650 (D. Md. 2009)

---

[2] As discussed *infra*, Earth Treks has filed a Motion to Strike Gemini's Extrinsic Evidence (ECF No. 28).  It is a well-settled principle under Maryland law that the insured, but not the insurer, may rely on extrinsic evidence to establish that a duty to defend exists.  *See, e.g., Marvin J. Perry, Inc. v. Hartford Cas. Ins. Co.*, 615 F. Supp. 2d 432, 434 (D. Md. 2009), *aff'd*, 412 F. App'x 607 (4th Cir. 2011) (Maryland law permit insureds (but not insurers) to produce extrinsic evidence for the purpose of demonstrating the potentiality of coverage). Additionally, Gemini has specifically indicated that it "does not rely upon extrinsic evidence to rebut any claim by Earth Treks that Gemini owed a duty to defend" in the *Fabian* Suit, but relies on extrinsic evidence only as to the applicability of the "Sexual Abuse or Molestation" ("SAM") or "Assault, Battery, or Assault and Battery" ("A&B") coverage limitation endorsements.  *See* Gemini Opp'n to Mot. to Strike, p. 3, ECF No. 32. Accordingly, Earth Treks' Motion to Strike Gemini's Extrinsic Evidence (ECF No. 28) is GRANTED with respect to the initial question of whether a duty to defend exists.

(quoting *Cole v. State Farm Mut. Ins. Co.*, 753 A.2d 533, 540 (Md. 2000)). Additionally, under Maryland law, "an act of negligence constitutes an 'accident' under a liability insurance policy when the resulting damage was an event that takes place *without [the insured's] foresight or expectation*," a *subjective* rather than objective standard. *USAA Cas. Ins. Co. v. Mummert*, 213 F. Supp. 2d 538, 542 (D. Md. 2002) (emphasis added) (internal quotations omitted). The Court of Appeals of Maryland has specifically explained that distinction as follows:

> If we were to adopt an *objective standard* and hold that the term "accident" as used in liability insurance policies excludes coverage for damage that *should have been foreseen or expected* by the insured, such insurance policies would be rendered all but meaningless. Under such an interpretation, the policy would provide no coverage for negligent acts resulting in objectively foreseeable or expectable damage. Only acts of negligence resulting in objectively unforeseeable or unexpectable damage would be covered. Of course, under basic principles of tort law, the insured is unlikely to be held liable for unforeseeable or unexpectable damages resulting from his negligence. Thus, interpreting "accident" as encompassing only negligent acts resulting in unforeseeable and unexpectable damages would leave the insured covered against only those damages for which he or she is not likely to be held liable.

*Sheets v. Brethren Mut. Ins. Co.*, 679 A.2d 540, 549 (Md. 1996) (emphasis added).

As discussed *supra*, the *Fabian* Suit alleges various negligence claims against Earth Treks premised, *inter alia*, on Fabian's contention that "Earth Treks *knew, or should have known*, that Lyons was not competent or fit for the duties of a youth climbing coach." Earth Treks concedes that the alleged sexual abuse would not constitute an "accident" and, accordingly, would not be covered by the Policy if Earth Treks had *actual, subjective knowledge* of the abuse. *See* Earth Treks Mem. Supp. Mot. Summ. J., p. 27, ECF No. 19-27. However, Fabian's alternative claim, that Earth Treks simply *should have known* of the abuse, would still be an "accident," and covered by the Policy, under Maryland's subjective definition of "accident." The United States Court of Appeals for the Fourth Circuit has explained that "[u]nder

Maryland's comprehensive duty to defend, if an insurance policy potentially covers any claim in an underlying complaint, the insurer . . . must typically defend the entire suit, including non-covered claims." *Perdue Farms, Inc. v. Travelers Cas. And Sur. Co. Of Am.*, 448 F.3d 252, 258 (4th Cir. 2006). "[I]n most circumstances, 'if any claims potentially come within the policy coverage, the insurer is obligated to defend all claims, notwithstanding alternative allegations outside the policy's coverage.' " *Id.* (quoting *Utica Mut. Ins. Co. v. Miller*, 746 A.2d 935, 940 (Md. Ct. Spec. App. 2000) (internal quotation marks omitted)).

Earth Treks executives Warner, Jenkins, and Heidtman have all stated that Earth Treks had a uniform system in place for reporting incidents of misconduct by Earth Treks employees, but nothing was brought to their attention indicating sexual abuse by their coaches. Lyons was referred to Earth Treks by a Team Earth Treks parent and, prior to hiring Lyons, Earth Treks interviewed him and contacted his references. Nothing led Earth Treks to believe that Lyons would engage in sexual acts with Earth Treks climbers. Additionally, Linda Fabian, Kelsey Fabian's mother, and Georgann Sheltraw, the mother of another Earth Treks climber, have both indicated that they never witnessed anything concerning in the behavior of Lyons or Montague. Furthermore, Detective Miller has explained that perpetrators of sexual abuse go to great lengths to hide their illicit activities and that Earth Treks had no chance of detecting Lyons' misconduct. Earth Treks has presented evidence that both Lyons and Montague were very well-liked among the Earth Treks community. Detective Miller specifically observed that "no one seemed to have anything bad to say about [Lyons] or would say anything bad about him . . . [t]hey all had praise about him." Having reviewed the allegations in the *Fabian* Suit and Earth Treks'

extrinsic evidence, Earth Treks has established, as a matter of law, a "potentiality" that the events underlying the *Fabian* Suit constitute an "accident" and, accordingly, are covered under the Policy.

The Policy additionally excludes coverage for " 'bodily injury' . . . expected or intended," although that exclusion only applies where injury was expected or intended "from the standpoint of the insured."  This Court has observed that "as to the duty to defend in particular, exclusions have been held inapplicable where the facts related to the triggering of the exclusion were in dispute, a conclusion consistent with the 'potentially covered' duty to defend rule followed in Maryland." *Cowan Sys., Inc. v. Harleysville Mut. Ins. Co.*, No. CCB-05-217, 2005 WL 2453002, at *7 (D. Md. Sept. 30, 2005), *aff'd*, 457 F.3d 368 (4th Cir. 2006). The Second Amended Complaint in the *Fabian* Suit does not allege that Earth Treks "intended" the alleged sexual acts committed by Montague and Lyons.  Additionally, based on the evidence outlined *supra*, Earth Treks' has demonstrated, as a matter of law, a "potentiality" that Earth Treks did not "expect" the alleged sexual abuse either. Accordingly, Earth Treks has demonstrated, as a matter of law, that the "expected or intended" exclusion does not foreclose coverage in this case.

Furthermore, as discussed *supra*, an opinion letter submitted to Earth Treks by Verus, Gemini's claims services representative, on behalf of its coverage counsel prior to litigation provided that Gemini *did have a duty to defend* Earth Treks in the *Fabian* Suit. Although not determinative, the Fourth Circuit has held that pre-litigation letters from an insurance company acknowledging coverage are "highly probative" of a duty to defend. *See Provident Bank of Maryland v. Travelers Prop. Cas. Corp.*, 236 F.3d 138, 145 (4th Cir. 2000); *see also Hartford*

*Fire Ins. Co. v. Annapolis Bay Charters, Inc.*, 69 F. Supp. 2d 756, 763 (D. Md. 1999).  For all of these reasons, Gemini owed Earth Treks a defense in the *Fabian* Suit as a matter of law.

II.     Gemini's Defense Obligation is Limited to $100,000

      A.     This Court Will Not Consider Extrinsic Evidence Submitted by Gemini

Gemini contends that Kelsey Fabian's allegations in the underlying *Fabian* Suit clearly fall within the ambit of the Policy's "Sexual Abuse or Molestation" ("SAM") and "Assault, Battery, or Assault and Battery" ("A&B") coverage limitation endorsements.  In support of this argument, Gemini has submitted extrinsic evidence as to the nature of the alleged sexual abuse against Fabian, including Kelsey Fabian's Deposition Transcript (ECF No. 27-11); Daniel Montague Criminal Plea Hearing Transcript (ECF No. 27-12); Michael Lyons Criminal Plea Hearing Transcript (ECF No. 27-13); Sergeant Aaron Miller Transcript (ECF No. 14); Declaration of Antonia L Baum, M.D. (ECF No. 27-16); Deposition of Michael Lyons (ECF No. 27-17); Clarissa Sheltraw Police Interview Transcript (ECF No. 27-18); Kelsey Fabian June 24, 2011 Police Interview Transcript (ECF No. 27-19); and Michael Lyons Police Interview Transcript (ECF No. 27-20).  Earth Treks has now filed a Motion to Strike Gemini's Extrinsic Evidence (ECF No. 28).

As discussed *supra*, the parties agreed that Gemini's extrinsic evidence would not be considered by this Court as to the preliminary question of whether a duty to defend exists, pursuant to well-settled Maryland law.  *See* Gemini Opp'n to Mot. to Strike, p. 3, ECF No. 32.  However, Gemini contends that a different standard should apply in determining the scope of its duty to defend and that it "is entitled to rely on extrinsic evidence to evaluate

Gemini's *limit of liability*." *Id.* at 2. For the reasons that follow, this Court will not consider Gemini's extrinsic evidence for either purpose.

It is a well-established principle of Maryland insurance law that "in deciding whether to defend, an insurer may only rely on the language of the policy and the facts alleged in the complaint, and not on outside evidence, as that would risk deciding the question on facts not advanced in the underlying action." *Cowan Sys., Inc. v. Harleysville Mut. Ins. Co.*, 457 F.3d 368, 372 (4th Cir. 2006) (citing *Cochran*, 651 A.2d at 866)). In fact, prior to the Maryland Court of Appeals decision in *Aetna Casualty & Surety Co. v. Cochran*, 651 A.2d 859 (Md. 1995), Maryland courts assessed whether a duty to defend existed "by applying the 'eight corners' rule, under which only the underlying complaint and the insurance policy could be consulted to determine the potentiality of coverage." *Id.* In *Cochran* "the Maryland Court of Appeals modified the rule to allow insureds to introduce extrinsic evidence for the purpose of demonstrating coverage . . . . [but] kept in place an asymmetrical prohibition on the use of extrinsic evidence by the insurer." *Id.* This prohibition applies even in cases where the insured is arguing for the application of a specific exclusion to the duty to defend, despite the fact that the insurer has the burden of proving any exclusions. *See, e.g., National Elec. Mfrs. Ass'n v. Gulf Underwriters Ins. Co.*, 162 F.3d 821, 824 (4th Cir. 1998); *Litz v. State Farm Fire & Cas. Co.*, 695 A.2d 566, 570 (Md. 1997).

Although Gemini now contends that this rule does not apply to evaluating Gemini's *limit of liability* under the SAM and A&B endorsements, Gemini has identified no authority supporting this position. This Court is aware of no authority holding that, in a duty to defend case, a different rule as to the admissibility of extrinsic evidence applies with respect

to establishing the limits of that duty than applies to the question of whether a duty to defend exists at all. On the contrary, the Court of Appeals of Maryland has held that defining the "scope and limitations" of coverage is part and parcel of the two-step duty to defend analysis. *See Cochran*, 651 A.2d at 862 ("[W]e must ascertain the scope and limitations of coverage under the Aetna insurance policies and then determine whether the allegations in the [underlying] action would potentially be covered under those policies."). Additionally, this Court has specifically held in *Nationwide Mut. Ins. Co. v. Lafarge Corp. et al.*, 910 F. Supp. 1104, 1109 (D. Md. 1996), *aff'd*, 121 F.3d 699 (4th Cir. 1997) that "coverage dispute[s] *aris[ing] as a result of* [an insurer's] duty to defend under its policies" also require this Court to "once again look to the *allegations of the complaints* in the underlying action which gave rise to [the insurer's] duty to defend." (emphasis added).

Furthermore, although "Maryland recognizes two limited exceptions to the general rule against an insurer's use of extrinsic evidence," *id.* (citing *Baltimore Gas & Elec. Co. v. Commercial Union Ins. Co.*, 688 A.2d 496, 509 (Md. Ct. Spec. App. 1997)), neither of them apply in this case. The Fourth Circuit has summarized those exceptions as follows:

> First, when the underlying tort plaintiff has amended his allegations against the insured, the insurer may utilize the amendments as extrinsic evidence. *Baltimore Gas*, 688 A.2d at 510. If the amended allegations no longer raise a potentiality for coverage, the insurer no longer has a duty to defend. As a second exception to the general rule, a court is not obligated to "turn a blind eye where [it is established] that an insured tortfeasor is excluded from coverage under [the] particular terms of the insurance policy." [quoting *Universal Underwriters Ins. Co. v. Lowe*, 761 A.2d 997, 1012 (Md. Ct. Spec. App. 2000)] In other words, an insurer may utilize uncontroverted extrinsic evidence from the underlying lawsuit if such evidence clearly establishes that the suit's allegations are beyond the scope of coverage.

*Id.* In this case, Gemini does not rely on any different version of the complaint in the *Fabian* Suit, nor has Gemini sought to introduce any "uncontroverted" extrinsic evidence that "clearly establishes that the suit's allegations are beyond the scope of coverage."

For these reasons, Earth Treks' Motion to Strike Gemini's Extrinsic Evidence (ECF No. 28) is GRANTED. This Court will not consider extrinsic evidence submitted by Gemini as to the existence of a duty to defend or in determining the scope of that duty under the SAM and A&B endorsements. However, as discussed *infra*, even without Gemini's extrinsic evidence, the allegations in the *Fabian* Suit and Earth Treks' own extrinsic evidence clearly demonstrate as a matter of law that the Policy's SAM and A&B coverage limitation endorsements do apply and limit Gemini's defense obligation to $100,000.

> **B.** **The "Sexual Abuse or Molestation" Coverage Limitation Endorsement Applies to the Allegations in the *Fabian* Suit**

The "Sexual Abuse or Molestation" ("SAM") endorsement to the Policy limits the amount that Gemini will pay with respect to claims made against Earth Treks "caused by actual or threatened sexual abuse or molestation by anyone of any person while in the care, custody or control of [Earth Treks]." Policy, p. 60, ECF No. 1-1. Earth Treks argues that the SAM limitation endorsement does not apply because Fabian was not in the "care, custody or control" of Earth Treks when the alleged sexual acts occurred at Linda Fabian's house or in the hotel room in Massachusetts. Earth Treks management has stated that Earth Treks does not exercise care, custody or control over climbers outside of competition or practice hours or on team trips. Linda Fabian and Georgann Sheltraw have both indicated that it was their understanding that Kelsey was under the care of Ms. Sheltraw on the Massachusetts trip. Additionally, Mr. Warner, the CEO of Earth Treks, has stated that

Montague was not acting as an employee of Earth Treks when he engaged in sexual acts with Fabian at Linda Fabian's home. However, Montague and Lyons both began their sexual relationships with Fabian at Earth Treks while Fabian participated in team activities and both used their positions at Earth Treks to pursue sexual relationships with Fabian.

Although the Policy does not explicitly define "care, custody or control," Maryland courts have discussed the concept extensively in the context of the student-teacher relationship. "Teachers are undeniably charged with the 'care and custody' of students. When parents send their child to school, they entrust the teacher with that child's well-being. For nearly a century, courts have recognized this basic principle." *Anderson v. State*, 812 A.2d 1016, 1023 (Md. 2002). "[A] teacher's duty of care and custody extends beyond the confines of the schoolyard." *Id.* The Court of Appeals of Maryland has observed that "[a]t bottom, a teacher-student relationship is based on the student's trust and acquiescence to her teacher's authority." *Id.* at 1022. "By virtue of [a teacher's] position, [a teacher] [is] able to exert influence upon [a student], not only within the confines of the school, but outside of it as well." *Id.* at 1033. In *Anderson*, the Court of Appeals of Maryland held that sufficient evidence existed for a trier of fact to find that [a teacher] was a person who had responsibility for the supervision of a minor child, under Maryland's criminal child abuse statute, because the teacher's "official supervisory interactions with the [child] that began at school, his transportation of her that was initiated at school, and his sexual involvement with her together constituted an indivisible, ongoing relationship." *Id.* at 1023-24.

While several of the sexual acts alleged in the *Fabian* Suit occurred away from the Earth Treks facilities, Fabian and Lyons did engage in sexual intercourse at Earth Treks

Columbia during an overnight team event shortly after the Massachusetts trip. Additionally, while the other acts were not committed on the Earth Treks premises, both Lyons and Montague were "able to exert influence" over Fabian by virtue of their positions. *See Anderson*, 812 A.2d at 1033. Lyons first engaged in sexual intercourse with Fabian during a competition trip, which Fabian attended as a member of Team Earth Treks. Lyons went on that trip in his capacity as head coach of the team, and the allegations in Fabian's Second Amended Complaint, as well as evidence submitted by Earth Treks itself, indicate that Fabian understood Lyons' invitation to Lyons' hotel room as coming from a coach. Fabian stated in her deposition testimony, submitted as extrinsic evidence by Earth Treks, that she "really didn't want to go" to Lyons' hotel room, "but [she] didn't, like, want to say no to him because he was a coach." Fabian Dep., p. 142, ECF No. 19-11.

Although Earth Treks contends that Fabian was under the "care, custody or control" of Georgann Sheltraw during the Massachusetts trip, the concept of "care, custody, or control" is not a mutually exclusive concept. *See, e.g., Holiday Hospitality Franchising, Inc. v. AMCO Ins. Co.*, 983 N.E.2d 574, 580-581 (Ind. 2013) (holding that motel guest molested by motel employee was under the "care, custody or control" of the motel, within the meaning of a similar insurance coverage exclusion, despite also being in the care of his friend's mother). Although Kelsey Fabian was under the care of Sheltraw on the trip, she was still, as a matter of law, under the "care, custody or control" of Earth Treks.

Earth Treks relies on the case of *Wicomico Cnty. Dep't of Soc. Servs. v. B.A.*, 141 A.3d 208 (Md. 2016), in which the Court of Appeals of Maryland found that a girl was not in the "care, custody or control" of her karate instructor when he sent her sexual text messages

because she was home when this conduct occurred and none of the sexually inappropriate behavior occurred during class or shortly thereafter. However, the Court of Appeals of Maryland specifically held in that case that "[i]f [the instructor] had given clear indications of romantic feelings during class, then the outcome might be different . . . . [i]f he had said or done anything inappropriate during their conversations immediately after class, while [the girl] was still at the martial arts center, then the outcome might be different . . . ." *Id.* at 219. In this case, Fabian has specifically stated that Montague kissed her at Earth Treks and that their relationship formed during, and as a result of, their coach-student relationship at Earth Treks. *See* Kelsey Fabian Interview, p. 36:2-3, ECF No. 19-24. She has further stated that Lyons "touch[ed]" her and began making sexually charged comments to her at Earth Treks, including inquiring as to when it would be his turn to engage in sexual acts with her. *See Tribbitt v. State*, 943 A.2d 1260, 1271 (Md. 2008).

Earth Treks further contends that the sexual acts alleged in the *Fabian* Suit do not constitute "abuse" or "molestation" because "sexual abuse or molestation would not include knowing, voluntary, consensual sexual activity." Earth Treks Mem. Supp. Mot. Summ. J., p. 32, ECF No. 19-27. Earth Treks argues that Fabian consented to the alleged sexual acts because she had a "crush" on Montague and did not resist Lyons' sexual overtures. Earth Treks further points to Fabian's knowledge of sexual acts, her "bucket list," and her statements that neither Lyons or Montague forced her to do anything she did not want to do. However, "[i]t is uncontested [under Maryland's criminal sex abuse statute] that the act of sexual intercourse by an adult with a fourteen-year-old girl qualifies as 'abuse.' " *Anderson,* 812 A.2d at 1020. Additionally, although Fabian has stated that Lyons "didn't physically

force [her]" to engage in sexual intercourse, she has alleged in the *Fabian* Suit that Lyons' and Montague's behavior was "increasingly aggressive" and that Lyons "used" Earth Treks trips to arrange sexual encounters. *Fabian* Second Am. Compl., ¶¶ 26, 30, ECF No. 7-7. Additionally, Fabian has made clear in deposition testimony submitted by Earth Treks that he "did force [her] to . . . by manipulating [her] and talking to [her] and making [her] do—go certain places and saying things and scaring [her]." Fabian Dep., p. 164, ECF No. 19-11. For these reasons, as a matter of law, the allegations in the *Fabian* Suit involved "sexual abuse or molestation." Accordingly, the "SAM" limitation endorsement applies."

C.    Alternatively, the Policy's "Assault, Battery, or Assault and Battery" Coverage Limitation Endorsement Would Also Apply

Even if Gemini's liability to defend Earth Treks were not limited by the "Sexual Abuse or Molestation" endorsement, it would still be limited by the Policy's "Assault, Battery, or Assault and Battery" ("A&B") endorsement. The A&B endorsement limits the amount that Gemini will pay with respect to claims made against Earth Treks "caused by . . . 'Assault,' 'Battery' or 'Assault and Battery.' " Policy, p. 59, ECF No. 1-1. "Assault" is defined as "an act creating an apprehension in another of immediate harmful or offensive contact" or "an attempt to commit a "Battery." *Id.* "Battery" is defined as "an act which brings about harmful or offensive contact to another or anything connected to another." *Id.*

Although Earth Treks argues that Fabian consented to the alleged sexual acts by Montague and Lyons and, therefore, that no battery occurred, Fabian was a fourteern-year-old minor at the time and, accordingly, was incapable of consenting. The Court of Special Appeals of Maryland has specifically held that "children cannot consent to sexual acts with an adult." *Pettit v. Erie Ins. Exch.*, 699 A.2d 550, 559 (Md. Ct. Spec. App. 1997). Earth Treks

further contends that Fabian suffered no injury.  However, the Second Amended Complaint in the *Fabian* Suit specifically alleges injury and, as a matter of law, "any sexual contact between an adult and a child, whether or not accompanied by force, is injurious to the child." *Id* (although discussed in the context of an "intentional injury" exclusion).  "Sexual contact by an adult upon a minor child clearly falls within our society's definition of offensive and harmful contact." *Id.* at 557.

Earth Treks relies on *Tate v. Bd. of Educ., Prince George's Cty*, 843 A.2d 890 (Md. Ct. Spec. App. 2004), a case in which the Court of Special Appeals of Maryland held "that a minor's consent is relevant for purposes of determining civil liability."  However, the *Tate* case involved the question of whether a minor child could "assume the risk," thus precluding recovery in a negligence action against a third-party.  This case, in contrast, concerns the applicability of an Assault and Battery coverage endorsement.  The question here is whether the A&B endorsement applies because an offensive and harmful touching occurred, not whether a third-party was negligent.  Furthermore, the *Tate* case held that assumption of the risk is available as a defense in a civil liability case *against a third-party*.  The case clearly states that it does not even reach "the question of whether assumption of the risk is available as a defense against the actual abuser." *Tate*, 843 A.2d at 901.

The Second Amended Complaint in the *Fabian* Suit clearly alleges that Kelsey Fabian was fourteen years old at the time she engaged in sexual acts with Montague and Lyons, then nineteen and over thirty years old, respectively.  Under Maryland law, those sexual acts were unconsented and injurious.  Additionally, Fabian's Second Amended Complaint specifically alleges injury in the form of "significant, negative effects on [her] health."  For these reasons,

the events underlying the *Fabian* Suit constitute a "battery" within the meaning of the endorsement, as a matter of law. Therefore, the "Assault, Battery or Assault and Battery" endorsement would also limit Gemini's defense liability under the Policy.

D. The *Fabian* Suit Constitutes "One Claim" Under the Policy's Coverage Limitation Endorsements, Limiting Gemini's Defense Obligation to $100,000

The "Sexual Abuse or Molestation" and "Assault, Battery or Assault and Battery" coverage limitation endorsements both limit Gemini's defense liability to "$100,000 Each Claim" and "$300,000 Aggregate." Policy, pp. 59-60, ECF No. 1-1. Under both endorsements, "[t]he *Each Claim Limit* is the most [Gemini] will pay as damages . . . sustained and expenses incurred in the defense and adjustment of claims and 'suits' *asserted in any one claim*." *Id.* (emphasis added). The endorsements provide that "[a]ll claims for damages made by one or more persons because of *any one act or series of acts* [of 'sexual abuse or molestation' or 'Assault,' 'Battery' or 'Assault and Battery'] shall be deemed to be *one claim*." *Id.* (emphasis added). "The Aggregate Limit is the most, subject to the Each Claim Limit, [Gemini] will pay as damages . . . in the defense and adjustment of claims and 'suits' regardless of how many persons assert claims or 'suits' against [Earth Treks]." *Id.*

"While the *Fabian* Suit contains multiple counts," Gemini contends that the Each Claim Limit "includes all counts or claims for injury to one person" and, accordingly, that the "*Fabian* Suit represents one claim," subject to a single $100,000 limit. Compl., ¶ 76, ECF No. 1. Earth Treks objects that Kelsey Fabian's claims against Lyons and Montague constitute two distinct "series of incidents" against "two distinct persons." Counterclaim, ¶ 69, ECF No. 7. Therefore, Earth Treks argues that it is entitled to a total of $200,000 in defense costs if either of the endorsements apply. *Id.*, ¶ 70.

The Court of Appeals of Maryland has held that, in interpreting insurance contracts, courts shall "accord words their ordinary and accepted meanings." *Pac. Indem. Co. v. Interstate Fire & Cas. Co.*, 488 A.2d 486, 488 (1985). "The test is what meaning a reasonably prudent layperson would attach to the term." *Id.* The Policy does not define the term "claim," but the Court of Appeals of Maryland has specifically held that "[t]he ordinary meaning of 'claim made' refers to the *assertion of a claim by or on behalf of the injured person against the insured*." *St. Paul Fire & Marine Ins. Co. v. House*, 554 A.2d 404, 407 (1989) (emphasis added); *see also Klein v. Fid. & Deposit Co. of Am.*, 700 A.2d 262, 270 (Md. Ct. Spec. App. 1997).

Although the Court of Appeals of Maryland has not squarely addressed the question currently before this Court—whether a Complaint alleging multiple acts of sexual abuse by two abusers against one individual constitutes a single "claim" or two separate "claims"— "[t]he Maryland appellate courts have made clear that, in this State and other states, courts construe insurance policies with 'each claim' or 'per person' liability limits to include *all claims for the injury to one person*." *Leake v. Johnson*, 40 A.3d 1127, 1142–43 (Md. Ct. Spec. App. 2012). For example, in *Travelers Indem. Co. v. Cornelsen*, 321 A.2d 149, 150-51 (1974), the Court of Appeals of Maryland held that a married couple's claim for "loss of consortium" following a car accident in which the husband was injured did not constitute a *separate claim* from the husband's "personal injur[y]" claim, under an insurance coverage limitation similar to the endorsements in this case, because it did not constitute "a bodily injury sustained *by a second person* as a result of the same occurrence." (emphasis added).

In *Essex Ins. Co. v. Doe ex rel. Doe*, 511 F.3d 198, 200 (D.C. Cir. 2008) the United States Court of Appeals for the District of Columbia Circuit, applying District of Columbia

law, held that a boy who was sexually assaulted by *four different* residents on *four different* *occasions* at a children's residential facility had *four different* "claims" against that facility under the facility's liability insurance policy. The D.C. Circuit based its holding, in part, on the fact that "insurers such as Essex are well aware how to limit their coverage for sexual abuse claims made against an insured," yet Essex had not done so in drafting its policy. *Essex Ins. Co.*, 511 F.3d at 201. The Court observed that "[a] contract may define negligence *with respect to multiple instances* of sexual abuse *as a single occurrence*." *Id.* In contrast to the Essex policy, the coverage limitation endorsements to the Policy in this case have done just that, specifically defining claims made because of "any one act *or series of acts*" as "*one claim*."

Therefore, although the *Fabian* Suit alleged multiple instances of abuse by two different Earth Treks coaches, it constitutes one "claim" within the meaning of the Policy's "Sexual Abuse or Molestation" coverage limitation endorsement or, alternatively, the "Assault, Battery or Assault and Battery" endorsement. As the Court of Special Appeals of Maryland has explained in *Leake*, 40 A.3d 1127 at 1142–43, an "each claim" insurance coverage limit "include[s] *all claims* for the injury *to one person*." (emphasis added). In this case, the *Fabian* Suit alleges injury to one person, Kelsey Fabian. Accordingly, Gemini's defense liability is limited to the "Each Claim" limit of $100,000 as a matter of law.

## CONCLUSION

For these reasons, Earth Treks' Motion for Partial Summary Judgment (ECF No. 19) is GRANTED IN PART and DENIED IN PART, and Gemini's Cross-Motion for Summary Judgment (ECF No. 27) is also GRANTED IN PART and DENIED IN PART. Specifically, Gemini did owe Earth Treks a defense in the *Fabian* Suit as a matter of law, but

its defense obligation is limited to $100,000 pursuant to the "Sexual Abuse or Molestation" ("SAM") coverage limitation endorsement or, alternatively, the "Assault, Battery, or Assault and Battery" ("A&B") endorsement. Accordingly, Judgment is entered for Earth Treks on Gemini's initial claim for declaratory judgment and Earth Treks' Counterclaim for breach of contract, subject to a $100,000 limit on Gemini's defense liability. This case shall proceed to a separate determination of the specific damages to be awarded, pursuant to this Court's Bifurcation Order of December 22, 2016 (ECF No. 25). Additionally, Earth Treks' Motion to Strike Gemini's Extrinsic Evidence (ECF No. 28) is GRANTED. All extrinsic evidence submitted by Gemini is stricken and has not been considered by this Court in determining whether Gemini owed Earth Treks a defense or in determining the scope of that defense under the coverage limitation endorsements.

A separate Order follows.

Dated: May 12, 2017

___/s/_____
Richard D. Bennett
United States District Judge